# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CONCIERGE BUSINESS SOLUTIONS,
INC.,
   Plaintiff,

   v.

DEPARTMENT OF VETERAN AFFAIRS,
et al.,
   Defendants.

Civil No. 23-1259 (ADC)

## OPINION AND ORDER

### I. Introduction and Procedural Background

Before the Court is defendant the United States Department of Veteran Affairs' ("VA")
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), filed on November 17, 2023.
**ECF No. 14**.[1] Plaintiff Concierge Business Solutions, Inc. ("Concierge") filed a consolidated
opposition to the motion to dismiss and a motion for leave to amend the complaint on January
2, 2024. **ECF No. 21**. Concierge attached the proposed amended complaint to its filing. **ECF No.
21-5**. The VA filed a consolidated reply and an opposition to the motion for leave on January 31,
2024. **ECF No. 26**. Concierge filed a sur-reply on March 5, 2024. **ECF No. 29**.

In essence, Concierge's original complaint sought to hold the VA liable under several
federal statutes and regulations for unpaid amounts owed to it by a federal contractor in relation
to work performed on a federal construction project. The VA argued that the Court lacks subject

---

[1] The other named defendants in this action are the National Cemeteries Administration, a division of the
Department of Veteran Affairs, and the United States of America.

matter jurisdiction over such claims and that Concierge also fails to state a claim upon which relief can be granted. In response, Concierge seeks to amend the complaint to clarify that it is pursuing a tort claim actionable under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, against the VA for its officer's willful or negligent actions, omissions, and/or misrepresentations in the supervision of the project.[2] The VA, for its part, maintains that such amendment should not be allowed because it would be futile insofar as it would not cure the Court's lack of subject matter jurisdiction or the insufficiency of Concierge's allegations.

After reviewing the parties' filings, and for the reasons set forth below, the Court **GRANTS** the VA's motion to dismiss and **DENIES** Concierge leave to file the proposed amended complaint.

## II.    Legal Standard

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions. *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 132 (D.P.R. 2007) (citing *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). Nevertheless, "[w]hen a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter."

---

[2] The Court notes that, although not raised by the VA, the United States is the only proper party in suits brought under the FTCA. *See Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir. 2000). This, by itself, would warrant partial dismissal of the proposed amended complaint as against the VA. *See Shanafelt v. Department of Veteran Affairs*, 332 F. Supp. 3d 379, 382 (D. Mass. 2018).

*González v. Otero*, 172 F. Supp. 3d 477, 495 (D.P.R. 2016) (citing *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002)). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Id.*

When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according to the plaintiff[s] the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). Courts also favorably construe a complaint when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and they "must contain sufficient factual matter[s] to state a claim to relief that is plausible on its face." *Id.* (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the resulting factual allegations "are too meager, vague, or conclusory to remove the possibility of relief from the

realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

As for requests for leave to file an amended complaint, Fed. R. Civ. P. 15(a)(2) provides that they should be "freely give[n]… when justice so requires." But such leave may be denied "when the request is characterized by undue delay, bad faith, futility, … the absence of due diligence… [or] if the proposed amendment would serve no useful purpose." *Calderón-Serra v. Wilminton Trust Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (internal citations and quotation marks omitted). "A proposed amendment is futile if it is either frivolous or contains some fatal defect…. Normally, this means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18 (1st Cir. 2022) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)) (some citations omitted). Accordingly, requests for leave to amend a complaint before discovery is completed and prior to the filing of a motion for summary judgment are reviewed for futility under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013); *Glassman*, 90 F.3d at 623.

III.    **Concierge's Allegations**

As part of the required analysis, the Court will identify below the well-pleaded allegations of the original complaint at **ECF No. 1** and of the proposed amended complaint at **ECF No. 21-5**. The Court will then apply the appropriate legal standard to the request to dismiss the original complaint and the request for leave to file the proposed amended complaint.

A.  **The original complaint.**[3]

Concierge is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Marrietta, GA, and is a certified Service-Disabled Veteran Owned Small Business Concern. **ECF No. 1** at ¶ 8. Its sole owner is Luis A. Montañez, a resident of Georgia. *Id.*

On January 14, 2020, Mr. Charles Daniels ("Mr. Daniels"), a Contracting Officer and Specialist for the VA and the National Cemeteries Administration ("NCA"), requested proposals for a construction project to be performed in the Bayamón National Cemetery in Puerto Rico ("Project"). *Id.*, at ¶¶ 5, 16. The request stated that a payment and performance bond would be required for the Project. *Id.*, at ¶¶ 16, 96.

On March 19, 2020, the NCA contracted US Diversified as general contractor for the Project under contract no. 36C78620N0380 for the amount of $151,152.00 ("NCA Contract"). *Id.*,

---

[3] Concierge's original complaint is somewhat disorganized, chronologically speaking. The Court has striven to give order to the well-pleaded facts it identified in the complaint.

at ¶ 17. The scope of work was "concrete work required for removal of floor pavers and installation of stamped concrete flooring." *Id.*, at ¶¶ 17, 22.

US Diversified subcontracted Concierge for the Project, and Concierge commenced work on November 9, 2020. *Id.*, at ¶¶ 23, 30. Concierge contracted labor and assumed unexpected financial obligations to perform its obligations on the Project, including a $50,000 loan. *Id.*, at ¶¶ 29, 81. The work performed by Concierge was divided in three main phases, which were substantially completed by December 29, 2020. *Id.*, at ¶¶ 55, 57, 58, 100. Concierge submitted three invoices to US Diversified on or about November 27, December 3, and December 19, 2020. *Id.*, at ¶¶ 28, 55, 57, 61. Additional work was required by US Diversified from Concierge before and after substantial completion was achieved. *Id.*, at ¶¶ 50-52, 75-78.

Concierge was under the belief that a payment bond for the Project was in place, as it was a requirement under the NCA Contract. *Id.*, at ¶ 21. The NCA requires performance and payment bonds or an irrevocable letter of credit "by the seed project and each Task Order requirement" in line with certain monetary limits. *Id.*, at ¶¶ 18, 97.

As a result of Concierge's work on the Project, the total amount of the subcontract rose to approximately $164,187.00. *Id.*, at ¶ 38. Concierge has only received approximately $26,000 in payment. *Id.*, at ¶ 39. On January 21, 2021, Concierge informed Mr. Daniels of US Diversified's non-payment. *Id.*, at ¶ 65. On January 26, 2021, the VA paid US Diversified 70% of the value of the contract for its work on the Project even though US Diversified had not fulfilled its payment

obligations to Concierge. *Id.*, at ¶¶ 31, 66-67. On April 2, 2021, the VA sent Concierge an email

stating that US Diversified may have submitted a false certification that it had already paid its

subcontractors prior to receiving payment. *Id.*, at ¶ 87. Concierge filed an administrative claim

on June 20, 2021, but as of the filing of the complaint had not received a response. *Id.*, at ¶ 6.

     Concierge included two causes of action in its complaint. First, it demanded that the VA

pay Concierge the amount of $105,852 for the work it contributed to the Project. *Id.*, at ¶ 89. The

theory of liability under this first cause of action is unclear, as Concierge invokes at times the

Miller Act, 40 U.S.C. § 3133 *et seq.*, and the Prompt Payment Act, 31 U.S.C. § 3905, and repeatedly

alludes to violations of the NCA Contract and the Federal Acquisition Regulations. Second,

Concierge requests that the Court declare that the United States has waived its sovereign

immunity and grant an equitable lien on the funds currently held by the NCA as part of the

NCA Contract. *Id.*, at ¶¶ 108-110. Lastly, although not explicitly spelled out, Concierge accuses

the United States of unjustly enriching itself at its expense and seeks recovery of $150,000. *Id.*, at

¶¶ 111-112.

     Notwithstanding the above, Concierge requests in its prayer for relief a judgment in the

amount of $150,000 plus interest, and that the Court grant the request for an equitable lien, costs,

reasonable attorney's fees, and prejudgment interest. *Id.*, at ¶ 116.

### B.  The proposed amended complaint.

Concierge's proposed amended complaint contains many of the same allegations as the original, although better organized and streamlined. *See* Concierge's Sur-Reply, **ECF No. 29** at 4 ("The Amended Complaint tendered… streamlines and clarifies all the facts o[f] the original Complaint."). The proposed amended complaint further fleshes out the facts relating to Concierge's efforts to obtain payment and reformulates its causes of action.

Among the new pertinent and well-pleaded allegations, Concierge alleges that a document titled "Payment Schedule" related to the NCA Contract required the issuance of a payment and performance bond for the Project pursuant to the Miller Act, and that the cost of obtaining this bond was factored into the value of the contract. **ECF No. 21-5** at ¶ 16. Concierge also alleges that US Diversified hired it as a subcontractor "to perform the whole Project." *Id.*, at ¶ 20.

Concierge alleges that the VA paid US Diversified despite either knowing about its lack of payment, because of its lack of control and supervision, or because it negligently failed to verify whether US Diversified had paid its subcontractors. *Id.*, at ¶ 26. When US Diversified failed to pay, Concierge sent notices and written demands to the VA and the NCA regarding US Diversified's default. *Id.*, at ¶ 25. Concierge allegedly requested from Mr. Daniels a copy of the Payment and Performance Bond at least seven times, including on March 24, 2021. *Id.*, at ¶¶ 42-43. On that same date, it also inquired with Mr. Daniels whether a tripartite escrow agreement

was set up instead, in accordance with federal law. *Id.*, at ¶ 44. Mr. Daniels did not respond even

though he was required to under federal regulations. *Id.*, at ¶¶ 44, 47-48.

Concierge alleges that on April 12, 2021, a member of the U.S. House of Representatives

sent a letter to the VA informing it of Concierge's situation. *Id.*, at ¶ 45. Further, Concierge details

how on May 12, 2021, it received a response from an officer by the name of Sharon G. Ridley

directing it to Mr. Daniels for more information on the payment bond. *Id.*, at ¶ 46. Concierge

hired a collection firm and a law firm to pursue collection efforts and to obtain a copy of the

payment bond. *Id.*, at ¶¶ 49-50. On May 20, 2021, Kellyann Bruno, Chief of the Contracting

Construction Department of the VA, sent an e-mail to Concierge stating that no such bond

existed for the Project because the bond requirement had been waived. *Id.*, at ¶ 51. Upon

receiving this news, Concierge requested information on any available funds on retainage. *Id.*,

at ¶¶ 53, 56. The response from Ms. Bruno was to refer Concierge to a small claims court. *Id.*, at

¶ 57.

Concierge further alleges that it was deprived of having recourse to the statutorily

required Miller Act payment bond due to Mr. Daniels' failure to require such bond from US

Diversified. *Id.*, at ¶¶ 28-31. Further, it alleges that any waiver for such requirement had no

cause or justification in law. *Id.*, at ¶¶ 38, 59-60. Concierge alleges that Mr. Daniels' wrongful

act, misconduct, or omission directly resulted in damages in the form of having to take out a

loan on February 3, 2021, to perform the works on the Project (with the accompanying costs and

fees), furnishing labor material and services valued at $105,852 that it has been unable to recoup, and incurring in lost business opportunities. *Id.*, at ¶¶ 32, 39-40. Concierge further claims that it relied on and was misled by the VA's representations that a payment bond had been required of and had been obtained by US Diversified for the Project. *Id.*, at ¶ 62.

Finally, Concierge alleges that on April 5, 2021, Mr. Daniels executed a contract which resulted in the unjust deduction of $45,345.60 from the value of the NCA Contract, which negatively affected Concierge. *Id.*, at ¶ 83. Concierge alleges that Mr. Daniels then refused to hear Concierge's concerns about this reduction and ceased all communications. *Id.*, at ¶¶ 84-85.

Concierge reformulated its causes of action, claiming, first, that Mr. Daniels' actions, omissions, and misrepresentations were in breach of several federal regulations and caused Concierge damages. *Id.*, at ¶¶ 59-65. Second, Concierge claims damages in the amount of $150,000 plus costs, interest, and attorney's fees for violations to the Prompt Payment Act because the VA willfully or negligently paid US Diversified when it knew or should have known that US Diversified had not paid Concierge. *Id.*, at ¶¶ 70, 72, 73, 78. Third, Concierge claims that the VA unjustly and arbitrarily deducted $45,345.60 from the NCA Contract to negatively affect Concierge's rights. *Id.*, at ¶¶ 82-89. And lastly, Concierge maintains its request for an equitable lien over funds currently held by the NCA in the amount of $150,000 to secure its damages. *Id.*, at ¶ 92.

## IV.    Discussion

Before turning to the plausibility of Concierge's allegations, the Court is compelled to first note that the original complaint's drafting made the asserted claims unnecessarily difficult to understand. Not only is the complaint all over the place chronologically, but it also contains erroneous legal citations and several sentences with difficult grammatical structures. Were it not for Fed. R. Civ. P. 8's lenient pleading standard, the complaint would be close to failing to identify the claims and relief being pursued. The proposed amended complaint, on the other hand, is a welcome improvement on its predecessor (although it still suffers from some of the latter's flaws) and allows for a more cogent analysis of the issues at stake. But Concierge cannot seriously complain, as it does in its opposition, that the VA's motion mischaracterizes the original complaint (**ECF No. 21** at 10), misleads, confuses, or induces the Court to err (*id.*, at 17-18), or presents "twisted arguments" and "red herrings" (*id.*, at 20) when it was so poorly drafted to begin with. Writing clearly avoids altogether the need some litigants feel to resort to overly argumentative language as compensation for shoddy drafting.

With this said, the Court proceeds to analyze the VA's arguments for dismissal. The rationale behind them varies depending on whether Concierge's claims can be properly characterized as either sounding in contract or sounding in tort. Concierge, for its part, affirms that its claims are tort claims. Thus, for purposes of analysis, the Court will assume that

plaintiff's claims are what it says they are: tort claims against the United States.[4] Under that assumption, the VA contends that the Court lacks subject matter jurisdiction under the FTCA.

**A.  Whether the Court has subject matter jurisdiction over Concierge's claims.**

The VA takes the position that this Court lacks subject matter jurisdiction for several reasons—among them, that Concierge's tort claims are barred by sovereign immunity. Specifically, the VA argues that even though the FTCA operates as a limited waiver of sovereign immunity for certain state-law tort claims, Concierge's claims are either not actionable under the FTCA or excluded from the waiver under the intentional tort and discretionary function exceptions.

**1.  Sovereign immunity, the FTCA, and its exceptions.**

Congress has granted district courts exclusive jurisdiction over:

> civil actions on claims against the United States, for money damages… for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, it is black-letter law that the United States and its agencies enjoy sovereign immunity from suit unless said immunity is waived. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and

---

[4] For this reason, the Court need not address the VA's arguments based on the assumption that Concierge's claims sound in contract.

its agencies from suit."); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued[.]"). "The FTCA constitutes 'a limited waiver of the federal government's sovereign immunity' against private suits." *Muñiz-Rivera v. United States*, 326 F.3d 8, 12 (1st Cir. 2003) (quoting *Shansky v. United States*, 164 F.3d 688, 690 (1st Cir. 1999)). "The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 506 (2013) (internal quotation marks omitted). Importantly, consonant with Congress' grant of jurisdiction, the statute allows tort claims against the United States only in the same manner and to the same extent that a private individual would be liable under the applicable law of the state where the tort occurred, the so-called "law of the place." *See* 28 U.S.C. §§ 1346(b)(1) and 2674; *see also Díaz-Nieves v. United States*, 858 F.3d 678, 683 (1st Cir. 2017); *Bolduc v. United States*, 402 F.3d 50, 56 (1st Cir. 2005); *Abreu-Guzmán v. Ford*, 241 F.3d 69, 75 (1st Cir. 2001).

The FTCA's limited waiver of the United States' sovereign immunity "must be construed in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires." *Bolduc*, 402 F.3d at 56 (internal citation and quotation marks omitted). Congress nevertheless excepted several categories of claims from this waiver. If a claim falls within one of those exceptions, a federal court will consequently lack subject matter

jurisdiction over the claim. *See Reyes-Colón v. United States*, 974 F.3d 56, 58 (1st Cir. 2020) ("[A]s with many rules, exceptions exist. And if one is present, the government's immunity remains intact—so the district court will lack subject-matter jurisdiction over the tort claim.").

One such exception involves claims arising from certain intentional torts, namely: "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights…." 28 U.S.C. § 2680(h). That is sometimes referred to as the "intentional tort exception." *Limone v. United States*, 579 F.3d 79, 92 (1st Cir. 2009). In order to determine whether the claim falls within this exception, courts must look to substance rather than form and "focus on the nature of the plaintiff's grievance…. If that grievance rests on proof of conduct that traditionally comprises an excepted tort, section 2680(h) precludes suit." *Id.* (citations omitted).

Another exception is the so-called "discretionary function exception," which preserves the United States' sovereign immunity against:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "In short, 'the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.'" *Torres-Estrada v. Cases*, 88 F.4th 14, 21 (1st Cir. 2023) (quoting *Berkovitz v. United*

*States*, 486 U.S. 531, 537 (1988)). A two-part analysis determines whether this exception applies. First, the conduct must be properly described as discretionary—that is, a federal statute, regulation, or policy must not dictate the course of action of the federal employee to the extent that he or she has no choice but to follow the directive. *See Reyes-Colón*, 974 F.3d at 58 (citing *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014)). Second, if the conduct is discretionary, then the exercise or non-exercise of the employee's discretion must be actually or potentially (*i.e.*, susceptible to be) affected by policy-driven considerations. *Id.*, at 59 (citing *Evans v. United States*, 566 F.3d 375, 383 (1st Cir. 2017) and *Mahon*, 742 F.3d at 12). If both these conditions are met, then the discretionary function exception applies, the United States is immune, and the Court will lack jurisdiction over the claim.

## 2.  Whether Concierge's tort claims fall within the scope of the FTCA.

As detailed above, Concierge puts forth several claims against the VA. First, a claim arising from the VA's employee Mr. Daniels' failure to require a payment bond from Project contractor US Diversified and/or his unjustified waiver of said bond requirement, all in violation of the Miller Act and several Federal Acquisition Regulations. **ECF No. 21-5** at ¶¶ 60-65. Second, a claim that Mr. Daniels unlawfully paid US Diversified a substantial amount of the NCA Contract's value before the latter had paid Concierge for its subcontracted services on the Project, in violation of the Prompt Payment Act. *Id.*, at ¶¶ 68-72, 77-79. Third, a claim arising from Mr. Daniels' unjust and arbitrary deduction of $45,345.60 from the NCA Contract, which

allegedly affected Concierge negatively, and is alleged to have been done in excess of his responsibilities under 48 CFR § 1.602-2. *Id.*, at ¶¶ 82-83, 86, 89. And fourth, a claim seeking an equitable lien over funds held by the NCA as part of the NCA Contract. *Id.*, at ¶¶ 90-92.

The Court's analysis begins with the threshold question of whether these claims are within the scope of the FTCA's waiver of sovereign immunity. That is, the Court must analyze whether a private individual would be liable for such claims under Puerto Rico law. If not, then the Court has no subject matter jurisdiction due to the United States' sovereign immunity. Importantly, "[t]he search for analogous state-law liability is circumscribed by the explicit language of the FTCA, which restricts that search to *private* liability." *McCloskey v. Mueller*, 446 F.3d 262, 267 (1st Cir. 2006). The analysis thus centers on finding "some relationship between the governmental employee and the plaintiff to which state law would attach a duty of care in purely private circumstances." *Id.* (quoting *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997)).

    a. **Violations of federal laws and regulations are not by themselves actionable under the FTCA.**

As to Concierge's first, second, and third claims (as numbered in the previous section), the VA argues that "violations of federal law do not constitute the basis for government liability under the FTCA." **ECF No. 26** at 6. It points to ample authority holding that the FTCA does not create a cause of action for violations of the Miller Act, the Prompt Payment Act, or the Federal Acquisition Regulations. *Id.* at 6-8. Chief among them is *Arvanis v. Noslo Engr. Consultants, Inc.*,

739 F.2d 1287 (7th Cir. 1984), where the Seventh Circuit rejected a claim that the Miller Act

"require[d] the government to insist that its contractors furnish Miller Act payment bonds." 739

F.2d at 1289-90. Concierge, however, appears to have disavowed any direct-action theory of

liability, and the Court would agree with the VA in that it would be unavailable to it. Whether

Concierge can nonetheless assert that a violation of these laws and regulations constitutes a tort

under the FTCA—that is, as between two private persons under Puerto Rico law—is another

matter that requires independent evaluation.

### b. Liability of the United States under Puerto Rico tort law.

Under Puerto Rico law, "[a] person who by an act or omission causes damage to another

through fault or negligence shall be obliged to repair the damage so done." Article 1802, Puerto

Rico Civil Code (1930), P.R. Laws Ann. t. 31 § 5141.[5] To state a tort claim, a plaintiff must allege

(1) a negligent or intentional act or omission, (2) damages, and (3) a causal relationship between

the act or omission and the damages. *See Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504

F.3d 43, 49 (1st Cir. 2007); *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, No. CV 20-

014 64-WGY, 2021 WL 2912436, at *8 (D.P.R. July 9, 2021) (quoting *Santiago v. Reliable Fin. Servs.*,

---

[5] The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.*, entered into force on November 28, 2020, repealing the previous 1930 Code. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023). The current version of the Puerto Rico Civil Code has yet to be officially translated into English. In any case, the current general tort statute, Article 1536, 31 L.P.R.A § 10801, is textually identical to the previous version, and because the alleged omission object of Concierge's claims must have occurred prior to Concierge beginning its work on the Project on November 9, 2020, the 1930 Code applies. *See* Article 1815, Puerto Rico Civil Code (2020), 31 L.P.R.A. § 11720 (providing that, in the context of tort claims, if one or more act or omission occurred before the entry into force of the 2020 Code but others occurred afterwards, the prior version of the Code will apply).

*Inc.*, 526 F. Supp. 2d 226, 234 (D.P.R. 2007)). In the case of omissions, "[a]n omission is negligent or wrongful when the defendant had a duty to act, yet failed to do so, and as a result a foreseeable injury occurred." *Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996) (citing *Tormos Arroyo v. Departamento de Instrucción Pública*, 140 P.R. Dec. 265 (1996)). The content of that duty, however, is not a specific one that is idiosyncratic to the type of tort in question; it is instead "a generic norm" to avoid "causing injury to another through active or passive action." *Soc. Gananciales v. G. Padín Co.*, 117 P.R. Dec. 94, 17 P.R. Offic. 111 (P.R. 1986). And the reasonable foreseeability of the injury is a central element of the breach of duty analysis (as well as that of the cause analysis). *Vázquez-Filippetti*, 504 F.3d at 49.

Concierge's first two claims derive from the allegation that Mr. Daniels failed to enforce a bonding requirement pursuant to federal law and regulations regarding a federal construction project. The focal point here is the matter of a breach of duty. As the First Circuit once put it, "if a private person under the same circumstances would owe no duty to a victim, there would be no state-liability (and, thus, no subject-matter jurisdiction[.])" *McCloskey*, 446 F.3d at 267. Thus, "a waiver of sovereign immunity attaches only where a *private person* would be held liable." *Bolduc*, 402 F.3d at 57 (citing 28 U.S.C. § 1346(b)(1)) (cleaned up).

Under this standard, the factual circumstances of Concierge's claims cannot be analogous to those which a private person could be held liable. Namely, a private person "could never be in a position to require a Miller Act bond, and thus of course could never be liable for failure to

require the bond." *Arvanis*, 739 F.2d at 1290. In addition, the Court is not aware of (and Concierge does not point to) any general duty applicable to a private person under Puerto Rico law to obtain a payment bond for construction projects.[6]

In all fairness, although not raised by Concierge at any point, there is a statutory remedy under Puerto Rico law that could be seen as providing a remedy analogous to that afforded by a payment bond. Under Article 1489 of the 1930 Puerto Rico Civil Code, P.R. Laws Ann. t. 31 § 4130, laborers and materialmen who furnish labor and materials to "a work agreed upon for a lump sum by a contractor" may institute an action against the owner of said work to recover the amount owed to them by the contractor. But crucially, this direct action against the owner of a construction work **is not a tort claim for damages.** Rather, it is a credit for a fixed amount that arises, although indirectly, from a contractual relationship. *Cf. Brand Scaffold Builders, Inc. v. Puerto Rico Elec. Power Auth.*, 364 F. Supp. 2d 50, 55 (D.P.R. 2005) (characterizing Article 1489 claim as a breach of contract claim); *see also, C. Armstrong e Hijos v. Díaz*, 95 P.R. Dec. 819, 823-25 (P.R. 1968) (explaining nature of Article 1489 and how it works as an exception to the general rule of contractual privity by bringing a third party subcontractor into the contractual relationship between the owner of the work and the contractor). Further, it does not impose any

---

[6] Relatedly, "the federal government does not yield its immunity with respect to obligations that are peculiar to governments or official-capacity state actors and which have no private counterpart in state law." *Bolduc*, 402 F.3d at 57. In other words, whether a state allows itself to be sued for certain tort claims is irrelevant for purposes of the FTCA because private liability is the central consideration. *See id.* That would be another reason to deny any argument pointing to Puerto Rico-law analogues to the Miller Act or Prompt Payment Act.

requirement on the project owner to obtain or force the contractor to obtain a payment bond. Thus, this action would not be a tort for purposes of Puerto Rico law or the FTCA.

For these reasons, Concierge's first and second claims for damages arising out of violations of the Miller Act, the Prompt Payment Act, and the Federal Acquisition Regulations must be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### c. The FTCA's intentional tort exception applies to Concierge's third claim.

Regarding Concierge's third claim, that Mr. Daniels violated federal acquisition regulations by reducing the value of the NCA Contract and caused damages to Concierge, this claim runs into the same obstacles as its first and second claims. That is, the claim fails insofar as a private person would not be liable for such conduct under Puerto Rico law. However, under a liberal reading, Concierge's third claim could be construed as a contractual interference tort claim. This is a recognized tort claim as between private persons under Puerto Rico law, which would put it within the ambit of FTCA's sovereign immunity waiver. *See, generally*, *Gen. Off. Prods. v. A.M. Capen's Sons*, 115 P.R. Dec. 553, 15 P.R. Offic. Trans. 727 (P.R. 1984). But even then, the claim runs head-first into the FTCA's intentional tort exception. 28 U.S.C. § 2680(h). As noted above, claims arising from "interference with contract rights" are explicitly excepted from the scope of the FTCA sovereign immunity waiver. *Id.* Therefore, Concierge's third claim must likewise be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

      **d.  Concierge's request for an equitable lien is barred by the United States' sovereign immunity.**

Concierge's fourth claim is a request for the Court to grant it an equitable lien over "funds currently held by the NCA in the amount of $150,000 to secure the damages suffered by [Concierge.]" **ECF No. 21-5** at ¶ 92. This claim is, in effect, a type of monetary claim against the United States—whose waiver of sovereign immunity in the FTCA "must be construed strictly in favor of the government." *Bolduc*, 402 F.3d at 56 (internal citation and quotation marks omitted).

In *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), the Supreme Court held that sovereign immunity barred a subcontractor in a federal project from obtaining an equitable lien over government funds even where the prime contractor defaulted and absent a Miller Act bond. There, the aggrieved subcontractor argued that section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702, operated as a waiver of sovereign immunity and allowed for much the same remedy as that requested by Concierge here. *Blue Fox, Inc.*, 525 U.S. at 260-61. The key in that case was that section 10(a) explicitly permitted actions against the United States where the relief sought was something "other than monetary relief." *Id.* The Supreme Court, examining the nature of the request, reasoned that "[l]iens, whether equitable or legal, are merely a means to the end of satisfying a claim for the recovery of money." 525 U.S. at 262. Thus, the subcontractor's request for an equitable lien "constitute[d] a claim for 'money damages'; its goal is to seize or attach money in the hands of the Government as compensation for the loss resulting

from the default of the prime contractor." *Id.*, at 263. The Supreme Court concluded that because a request for equitable relief was a claim for money damages, it was outside the scope of section 10(a)'s sovereign immunity waiver.

Even though *Blue Fox, Inc.* did not directly involve the FTCA, it is instructive inasmuch this Court is likewise called to construe the FTCA's sovereign immunity waiver narrowly in favor of the United States. As mentioned above, the FTCA waives the government's immunity solely for "claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of federal employees acting within the scope of their employment." 28 U.S.C. § 1346(b)(1); *Levin v. United States*, 568 U.S. 503, 506 (2013). A request for an equitable lien is nothing more than "a means to the end of satisfying a claim for the recovery of money." *Blue Fox, Inc.*, 525 U.S. at 262. It stands to reason that a claim for an equitable lien purportedly based on the FTCA, as Concierge has characterized its claim to be, is not in truth a free-standing claim, but rather a specific request for an alternative form of relief based on the previously detailed tort claims and their respective theories of recovery. The Court has already found these claims to be barred by sovereign immunity, so it follows that this last claim is also barred. That is all that needs to be said as to Concierge's fourth claim.

Accordingly, the claim is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[7]

**V.      Conclusion**

Taking together Concierge's original complaint at **ECF No. 1** and the proposed amended complaint at **ECF No. 21-5**, the Court finds that Concierge's claims against the VA are barred by the United States' sovereign immunity. For that reason, the complaint must be dismissed. The Court further finds that denial of leave to file the proposed amended complaint is proper under these circumstances, as it would be futile.

Accordingly, for the reasons stated above, the Court **GRANTS** the VA's motion to dismiss at **ECF No. 14** and **DENIES** Concierge leave to file the amended complaint. Concierge's claims are hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 23rd day of August, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[7] Because the Court finds that Concierge's claims do not fall within the scope of the FTCA, it need not address the additional arguments for dismissal included in the VA's motion to dismiss, **ECF No. 14**, and reply and opposition to motion for leave to amend the complaint, **ECF No. 26**.